UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LORY FABIAN, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | Cause No.: 4:12-CV-01112 |
| ) | |
| THE ST. LOUIS RAMS PARTNERSHIP, ) | |
| et al. ) | |
| ) | |
|     Defendants. ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants (collectively the "Rams") submit this memorandum in support of their Motion for Summary Judgment.

    A. **Facts germane to all counts.** The story of this case is told in the attached Statement of Uncontroverted Material Facts. While employed by the Rams, Lory Fabian was described as "singularly the worst employee … in the organization." **Ex. F at 28:1-20.** Her poor performance and poor-er treatment of coworkers are documented in her attached reviews and communications, as are the Rams' earnest efforts to help her improve and succeed – efforts that included hiring a professional "coach" to help Plaintiff improve her attitude and interactions with co-workers, and allowing her to design a "dream job" she felt able to perform. S**UMF ¶¶48-61.**

Near the end of her tenure, when new management was headed into the organization, Plaintiff asked Rams President John Shaw for a contract guaranteeing her employment until she reached age 55 and qualified for the NFL's JC-1 health insurance benefit. **Ex. F 27:16-28:13**. In January 2010, Plaintiff was given an Employment Agreement ("Agreement") with the understanding that she would not receive another and that this contract was her severance. **Ex. B**

1

**117:21-24.** Plaintiff understood this would be her final contract and negotiated a 3% increase of, in her words, "final salary to help build up [her] retirement salary." **Ex. T.**

The Rams honored the Agreement and though Ms. Fabian and her attorney alleged falsely that the Rams deprived her of the JC-1 benefit[1], she has received it.[2] At the expiration of the Agreement, Plaintiff was not offered another contract. She then began her pursuit of age discrimination, sexual harassment, retaliation and battery claims.

Plaintiff's sexual harassment claims are, by her own admission, baseless and rely on hearsay from, and anecdotes of alleged (and misreported) misbehavior supposedly experienced by other female employees, including non-sexual stray comments. **SUMF ¶¶74-86.** Though her Complaint in this case (**Ex. A**) asserted sexual harassment allegations against the Rams' Chief Revenue Officer Bob Reif (even listing Mr. Reif as a "defendant"), she declined the Court's August 2012 invitation to amend her Complaint to assert a claim against Mr. Reif (who is not a party) and backed away from those allegations at her April 5, 2013[3] deposition, where she described Mr. Reif's alleged harassment as benign conduct she herself did not take as sexual. *Id*.

Plaintiff's Complaint alleges that the Rams' decision to not give her another agreement after her final Agreement ended violated the "ADEA" (Count 1) and Title VII of the Civil Rights Act of 1964 ("Title VII") (Counts II and III). She also alleges a battery. (Count IV)

All of Plaintiff's allegations are contradicted by her own testimony and ample a mountain of uncontroverted facts. For the reasons set forth below, the Rams are entitled to a summary judgment on all Counts.

---

[1] Despite qualifying for JC-1 benefits, Plaintiff alleged here that "[h]ad [she] remained with the Rams until she reached the age of 55, she would have qualified for health insurance benefits until the age of 65 under NFL Resolution JC-1." **Complaint at ¶ 21**.
[2] Fabian Deposition (**Ex. B**) at 108:25 – 109:7 ("Q: Are you eligible for the JC-1 benefit? A: Yes. Q: Okay. Have you ever told anyone or taken the position that you weren't eligible for it? A: No.").
[3] Exhibit B, 195:12-196:5, 198:2-19.

**B. Summary Judgment Standard.** Summary judgment "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those cases that really do raise genuine issues of material fact." *City of Mt. Pleasant v. Associated Elec. Coop. Inc.*, 838 F.2d 268, 273 (8th Cir. 1988).

Under FRCP 56(c)(2), summary judgment shall be entered "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, a court is required to view the facts in the light most favorable to the nonmoving party and must give that party the benefit of all reasonable inferences to be drawn from the record. *Sokol & Assocs., Inc. v. Techsonic Indus., Inc.*, 495 F.3d 605, 610 (8th Cir. 2007). Summary judgment is proper when a nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

The initial burden is placed on the moving party to establish the nonexistence of any genuine issue of fact that is material to a judgment in its favor. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). Once met, the burden then shifts to the non-moving party who must set forth evidence and facts showing there is a genuine dispute on a material factual issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The non-moving party may not rest on its pleadings, or mere denials or allegations, but by affidavit and other evidence must set forth specific facts showing a genuine issue of material fact. Fed. R. Civ. P. 56(e); *Herring v. Can. Life Assur. Co.*, 207 F.3d 1026, 1029 (8th Cir. 2000).

3

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Herring*, 207 F.3d at 1029.

A party resisting summary judgment has the burden to designate the specific facts that create a triable question of fact.  *See Crossley v. Georgia-Pacific Corp.*, 355 F.3d 1112, 1114 (8th Cir. 2004). "Self-serving, conclusory statements without support are not sufficient …." *Armour and Co., Inc. v. Inver Grove Heights*, 2 F.3d 276, 279 (8th Cir. 1993).

**C.  Count I.  (Age Discrimination)**  An employee can survive an employer's motion for summary judgment by presenting "direct evidence" which is "admissible evidence directly indicating unlawful discrimination, that is, evidence showing a specific link between the alleged discriminatory animus, and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action" or by creating an inference of unlawful discrimination under the burden-shifting framework established in *McDonnell Douglas v. Green*, 411 U.S. 792, 802-804, 93 S.Ct. 1817 (1970)."

"Under the McDonnell Douglas framework, a presumption of discrimination is created when the plaintiff meets his burden of establishing a *prime facie* case of employment discrimination." *Pope v. ESA Services, Inc.*, 406 F.3d 1001, 1006-1007 (8th Cir. 2005); *Putnam v. Unity Health Sys.*, 348 F.3d 732, 735 (8th Cir. 2003).  To establish a prima facie case of age discrimination under the ADEA, Plaintiff must show that: (1) she was a member of a protected age group – over 40 years old – at the time she was not given another contract; (2) she was qualified for an available position; (3) she was rejected; and (4) employees similarly situated but

4

not part of the protected group were hired instead. *See Loeb v. Best Buy Co., Inc.*, 537 F.3d 867, 872 (8th Cir. 2008); *Calder*, 298 F.3d at 729.

Though Plaintiff was indeed over 40, she cannot establish a prima facie case of age discrimination because her only evidence that she was qualified for her position is her own testimony and convenient testimony from friendly witnesses who didn't work with her, but thought "she did a wonderful job." **Leduc Depo, Ex. SS at 41:20-24.**

If the employee meets this burden, it then "falls to the employer to promulgate a non-discriminatory legitimate justification for its conduct, which rebuts the employee's *prime facie* case." *Sprenger v. Fed. Home Loan Bank of Des Moines*, 253 F.3d 1106, 1111 (8th Cir. 2001). If the employer provides a nondiscriminatory reason for its actions, the burden shifts back to the plaintiff to produce evidence that such reason is merely a pretext for discrimination. *Id.* "At all times, the burden of persuasion remains with the plaintiff." *Pope*, 406 F.3d at 1007.

Here, there is no competent direct evidence of unlawful discrimination. But even if the Court finds otherwise, Plaintiff cannot meet her burden to show that the several reasons for not renewing her Agreement were pretextual under the *McDonnell Douglas* burden shifting analysis.

        a.      **Plaintiff cannot make a *prime facie* case of age or sex discrimination.**

Plaintiff lacks competent direct evidence that the Rams' decision to not offer her a second final Agreement was improperly motivated by her age or sex[4]. It is anticipated that in an effort to show a pattern of discrimination that Plaintiff will urge that the Rams mistreated coaches, trainers and other football personnel over 40. She claims that the Rams decision to change photographers (who are not employees) is evidence of discrimination. It is well settled, however, that only employees' similarly situated in all respects are germane to age

---

[4] Plaintiff has not conducted discovery on a claim of sex discrimination and it is pled oddly. Defendant believes she has abandoned this claim and this section of this memorandum refers only to her age claim, though it applies to all claims of discrimination. Plaintiff's alleged "Sexual Discrimination" claim is discussed in Section D, *infra*.

discrimination cases. *Fields v. Shelter Mut. Ins. Co.*, 520 F.3d 859, 864 (8th Cir. 2008); *Gilmore v. AT&T*, 319 F.3d 1042, 1046 (8th Cir. 2003).[5] Plaintiff's "direct evidence" in the form of anecdotes about other employees and contract photographers over the age of forty who were replaced, fired or somehow "forced" to retire fails to support her claims.

Strength and Conditioning Coach Dana Leduc was born in 1953 and was 55 when he was fired in 2009. **Leduc Depo, Ex. SS, 12:12.** But Coach Leduc was an employee on the football side of the organization, was let go by Coach Spagnuolo and General Manager Billy Devaney when the former created his own coaching staff (***Id.***) and was replaced by Coach Rock Gullickson (Strength and Conditioning Coach of the Year in 2008[6]) who was 54 years and 10 months old when he replaced Coach Leduc. **Demoff Aff. Ex. L.**

Former Rams employee Pam Benoist's retirement similarly fails to support any age discrimination claims. **SUMF at ¶¶ 68-70.**

Ms. Benoist also claims that someone else heard that Rams COO Demoff made statements about his intent to fire middle aged women. **Ex. JJ at 67-68.** But Mr. Demoff denied these statements (**Exhibit PP at 78:6-25**) and conversations with people who supposedly heard him make them are inadmissible hearsay, which cannot be used to defeat a motion for summary judgment. *Johnson v. Baptist Med. Ctr.*, 97 F.3d 1070, 1073 (8th Cir. 1996); *Farnsworth v. Covidien, Inc.*, No. 4:08-cv-01689-ERW, 2010 WL 147812, at *8 (E.D. Mo. Jan. 11, 2010).

Plaintiff has offered other names and anecdotes that she claims cobbled together add up to *proof* of age discrimination or a pattern of it. They don't. Some of these people and stories

---

[5] There exist two conflicting lines of cases in this Circuit regarding the definition of "similarly situated employee" at the *prime facie* stage of the *McDonnell Douglas shifting analysis.* Rodgers v. U.S. Bank, N.A., 417 F.3d 845, 851 (8th Cir 2005). "One line sets a 'low threshold' … requiring only that employees are involved in or accused of the same or similar conduct and are [treated] in different ways'." *Id.* "The other line … is more rigorous at the *prime facie* stage and requires that the employees must be 'similarly situated in all respects'." *Id.* Quoting *Gilmore v. A.T.&T.*, 319 F.3d 1042, 1026 (8th Cir. 2003). Here, either test yields the same result: The Plaintiff has no evidence about "similarly situated" employees who were treated better, worse or the same as she.
[6] http://www.kffl.com/player/13663/NFL.

are discussed in the SUMF. Others will be addressed when Plaintiff attempts to show that the Rams' reasons for not rehiring her were pretextual.

Plaintiff has no competent evidence of discrimination other than conjecture and hearsay which collapse under even gentle scrutiny. Her claim must be analyzed, if at all, using the *McDonnell Douglas* burden shifting framework. *See also Johnson v. AT&T Corp.*, 422 F.3d 756, 761 (8th Cir. 2005); *Calder v. TCI Cablevision of Mo.*, 298 F.3d 723, 728-29 (8th Cir. 2002).

### b. The Rams' reasons for not rehiring Plaintiff are not pretextual.

Even if she can establish a prima facie case, shifting the burden to the Rams to articulate a legitimate, nondiscriminatory reason for its actions, *Putnam*, 348 F.3d at 735, there are troves of competent, documented, reliable evidence showing that the Rams had excellent reasons to not rehire Plaintiff. She cannot show by a preponderance of the evidence that the Rams' several reasons for not giving her another Agreement were all mere pretext for unlawful discrimination. *See, e.g., Tyler v. University of Ark. Bd. Of Trs.*, 628 F.3d 980, 986 (8th Cir. 2011).

### c. The many nondiscriminatory reasons for not rehiring Plaintiff shifts the burden back to her to prove pretext – which she cannot do.

To avoid summary judgment, Plaintiff must, with competent evidence, prove the Rams' reasons for the adverse job action were pretextual. *Wilson v. International Business Machines Corporation*, 62 F.3d 237 (8th Cir. 1995). Plaintiff cannot defeat summary judgment by offering unsupported self-serving speculation. *Wilson 62 F.3d at 241*.

A plaintiff can establish pretext by showing that an employer: (1) failed to follow its own policies; (2) treated similarly-situated employees more favorably; or (3) made substantial changes over time in its proffered reason for an employment decision. *Arnold v. Nursing and rehabilitation Center, LLC*, 471 F.3d 843, 847 (8th Cir. 2006). Regardless of the method used, a

7

plaintiff "must demonstrate that a discriminatory animus lies behind the defendants' neutral explanations." *Id*. (citing *Roxas v. Presentation Coll.*, 90 F.3d 310, 316 (8th Cir. 1996)).

Plaintiff has no proof that similarly situated employees were treated more favorably. Nor did the Rams' reasons for not rehring her change or violate any company policies.

In fact, the Rams worked to help Plaintiff succeed. The Rams loaned her $20,000 to help buy a home. **Ex. B at 19:5-20:3.** The Rams hired a success coach to help her deal more constructively with coworkers. **SUMF at ¶¶ 48-55.** The Rams allowed her to design a dream job – Alumni Coordinator. **SUMF at ¶¶ 62-64.** The Rams responded to her vitriol with measured words. *See, e.g.* **Exs. R and Z; Exs. U and V.** The Rams gave her an Agreement to assuage her concerns about JC-1 and forthrightly told her in January 2010 that she would not receive another contract. **Ex. B 117:21-118:25.** The Rams hired Plaintiff at age 39 and accepted/accommodated her attitude and attendance for many years.

It is anticipated Plaintiff will say she was an exemplary employee, with exemplary attendance and attitude. She will claim she was not the cause of errors, miscommunications or hurtful/incendiary notes she penned in frustration. She believes that Rams management had no good reason *not* to rehire her when the Agreement expired. But Plaintiff's evidence "must do more than merely raise doubts about the wisdom and fairness of the opinions of [Ms. Fabian] held by [her] superiors . . . . It must create a real issue as to the genuineness of those perceptions." *Edmund v. MidAmerican Energy Co.*, 299 F.3d 679, 685-86 (8th Cir. 2002). "Employers are free to make employment decisions based upon mistaken evaluations, personal conflicts between employees, or even unsound business practices." *Id.* "Federal courts do not sit as 'super personnel departments reviewing the wisdom or fairness of the business judgments

8

made by employers, except to the extent that those judgments involve intentional discrimination.'" *Id.* (quotations omitted).

Employers are even free to be wrong or misguided. *Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 935-36 (8th Cir. 2006) (even if the reason for the adverse action was false, plaintiff must still prove the employer did not honestly believe and rely on it); *Macias Soto v. Core-Mark Intern., Inc.*, 521 F.3d 837, 842 (8th Cir. 2008). Plaintiff cannot establish that the Rams' asserted justifications for not giving her another final Agreement was pretextual.

The Supreme Court has established a *but for* test when assessing a claim under ADEA. *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 176-77 ("To establish a disparate-treatment claim under the plain language of the ADEA…a plaintiff must prove that age was the "but-for" cause of the employer's adverse decision."). The plaintiff bears the burden of persuasion to establish this *but for* cause. *Id.* at 177. Here, Plaintiff cannot show that her performance, attendance and attitude were so exemplary that something illegitimate must be have been driving the Rams' decision to not give her another Agreement. There is no evidence that the Rams would have renewed Ms. Fabian's employment agreement but for her age. There are and were, however, many valid reasons to not give her another Agreement:

    i)       Poor attitude. *See* ¶*11-15 SUMF*.
    ii)      Poor performance as documented in reviews. *See* **Ex. G, H.**
    iii)     Poor treatment of fellow workers. *See* ¶¶*16, 17 SUMF*. **Fabian Depo at 96:18.**
    iv)     Poor/insubordinate treatment of superiors. *See ¶¶ 23-29, 44,* **SUMF.**
    v)      Poor attendance. *See ¶¶ 39-41* **SUMF**. *See also* **Ex. EE**
    vi)     Poor responses to fair criticism. *See ¶¶ 9* **SUMF**. **Fabian Depo Ex. B at 229.**
    vii)    Skipping official Rams events out of pique. *See* ¶*17* **SUMF.**
    viii)   Hostility toward coworkers and supervisors. *See ¶¶ 16-19, 21-29,* **SUMF**.

Plaintiff simply cannot show that the Rams' many documented reasons for their 2011 decision were all pretextual. The Rams are entitled to a summary judgment on Count I

("ADEA") of Plaintiff's Complaint as a matter of law.

### D. Count II. "Sexual Discrimination, Harassment and Hostile Work Environment."

Though the title of Count II suggests a claim of gender discrimination under Title VII, Plaintiff in fact asserts no such claim. **Ex. A at ¶ 37-59**. This count appears to be devoted to harassment and unwanted physical contacts.

In a gender discrimination case, Plaintiff must show that her sex was a motivating factor in the Rams' decision not to not give her another Agreement. 42 U.S.C.S. § 2000e-2(m). She has not made this allegation. There is also no evidence that gender was (or that Plaintiff believes) gender was a motivating factor. To the extent that she has asserted a claim for gender discrimination, that claim fails as a matter of law.

#### a. Plaintiff's testimony about Mr. Reif contradicts her Complaint.

According to Plaintiff, Bob Reif touched her on her shoulders or neck three times over her entire career. **SUMF at ¶78.** He did not touch her waist, nor did he put his arms around her from behind as alleged in her Complaint. **SUMF at ¶77-82.** Plaintiff knew Mr. Reif intended nothing sexual by touching her on her shoulders and testified that she did not believe he was inviting her to have a more physical relationship when he did so. **SUMF at ¶80.** She never told him to stop and never told the Rams he had touched her in an offensive manner. **SUMF ¶79-84.**

#### b. Plaintiff Did Not Work in a Hostile Work Environment.

"Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment -- an environment that a reasonable person would find hostile or abusive -- is beyond Title VII's purview." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21-22 (1993).

10

Though Plaintiff will offer information about an off-duty incident involving another female employee and inappropriate language in a 2007 email, these and her unreported-at-the-time accounts of Mr. Reif (**SUMF ¶¶ 78-82**) touching her shoulders or neck three times are not evidence of severe or pervasive conduct sufficient to create an objectively hostile or abusive work environment. *See Erenberg v. Methodist Hosp.*, 357 F.3d 787, 792-93 (8th Cir. 2004) (holding back rubs and sexual jokes in the workplace in the moderate amounts alleged were not actionable as sexual harassment). "Title VII does not prohibit all verbal or physical harassment in the workplace and is not a general civility code for the American workplace." See *Hervey v. County of Koochiching*, 527 F.3d 711, 722 (8th Cir. 2008) (internal marks omitted), cert. denied, 129 S. Ct. 1003, 173 L. Ed. 2d 293 (2009).

Though he devotes most of his time to the Rams, Mr. Reif is still a contractor and Plaintiff must still show the employer's knowledge and negligence when the offending conduct is that of a non-supervisor. *Faragher v. City of Boca* Raton, 524 U.S. 775, 789 (1998). P

Plaintiff's hostile work environment claim fails as a matter of law and the Rams are entitled to summary judgment on Plaintiff's gender discrimination and sexual harassment claims, including her hostile work environment claim.

      **E.  Count III.  (Retaliation)**  To establish a claim of retaliation, Plaintiff must show that (1) she engaged in a "protected" activity such as complaining about harassment or age discrimination; (2) the Rams took or engaged in a materially adverse action; and (3) a causal connection existed between the protected activity and the materially adverse action. *Burlington Northern & Santa Fe Ry. Co. v. White*, 548, U.S. 53, 67-68 (2006); *Higgins v. Gonzales*, 481 F.3d 578, 589 (8th Cir. 2007).  Plaintiff has no evidence on at least two of these three elements.

          **d.**  <u>**There is no that evidence Plaintiff was engaged in protected activity.**</u>

11

Plaintiff has alleged that she asserted "complaints concerning the age discrimination and sexual harassment she was subjected to." **Ex. A at ¶ 61**. But she also testified she experienced no sex or age discrimination nor ever reported either to the Rams *and* complains that the lack of a Human Resources Department made such a complaint impossible. **Ex. B 200:1-18, 202:9-13.**

The Rams decided that June 30, 2011 would be Plaintiff's last day with the organization in January 2010. **Ex. B. at 104:11-21, 113:20-23.** Prior to that date, Plaintiff had never complained about age discrimination. She testified that she worried about employees being let go after Georgia Frontiere passed away, but when she expressed concern about losing her job to a Rams executive, she ultimately received a contract giving her heightened job protection—hardly what one would call a retaliatory action. **Ex. F, 70:17-23; Ex. B 17:11-15.**

Plaintiff also admitted she never complained about Mr. Reif's conduct – the conduct alleged in the Complaint or the conduct she described in her deposition. **SUMF ¶¶78-84.**

There is simply no evidence of the first essential element of retaliation claim.

        **e.**        **It is unclear what conduct Plaintiff believes is a "materially adverse employment action."**

Plaintiff has alleged that "Defendant Rams retaliated against [her]." **Ex. A at ¶ 62**.

An action is "materially adverse" when "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington* at 68. Providing Plaintiff with the Agreement she asked for that gave her the job protection she asked for and ensured she would qualify for the JC-1 benefits she asked for cannot possibly be considered a "materially adverse" action.[7] The only possible adverse action is the Rams' not renewing the Agreement. The timing of that decision is particularly problematic for Plaintiff.

---

[7] Plaintiff neither timely claimed nor even suggested that providing the 18 month Agreement was a *materially adverse action*, in her MCHR Charge of Discrimination **Ex E.**

12

### f. **Plaintiff cannot establish the requisite causal connection.**

To prevail in her retaliation claim under Title VII, Plaintiff must show that retaliation was a "but for" cause of the Rams' decision to not give her a second final Agreement. *Univ. of Texas Southwestern Medical Center v. Nassar*, 133 S.Ct. 2517, 2534 (2013) (establishing "but-for" causation standard for retaliation claims under §2000e-3(a)); *see also Grebin v. Sioux Falls Indep. School Dist. No. 49-5*, 779 F.2d 18, 20 n. 1 (8th Cir. 1985) (defining "determining factor" causation standard as "but for" causation).

Plaintiff cannot establish this causal connection because she never made any complaint about age discrimination or harassment prior to her formal complaint with the MCHR on July 15, 2011, months after her employment with the Rams ended under the terms of her Agreement.

Plaintiff's Complaint alleges that she reported "discriminatory age related comments and discriminatory actions" to John Shaw while she was employed but at deposition she spoke of meeting with John Shaw in April of 2008, regarding her concern that she might lose her job during a period of staff turnover during an ownership change. **Ex. B at 26:14 – 29:2, 65:9-16**. She said nothing of reporting discrimination to Mr. Shaw, but said that he promised to protect her from turnover and would make sure she had a contract guaranteeing employment through her 55th birthday, which would make her eligible for the NFL JC-1 benefit. **Id. at 105:12-108:9.**

Ms. Fabian did not complain about age discrimination to Mr. Shaw in their April 2008 meeting, but even if she had, the connection beyond that comment and any adverse job action is beyond attenuated. If her complaint is that the Rams refused to give her another final Agreement in June 2011, the protected activity and the adverse action are more than three years apart. Three years is too much of a gap between protected activity and an adverse action to support a causal

13

connection.[8]  There is no evidence that the Rams retaliated against Plaintiff for any kind of protected activity.  In fact, all evidence in the record points to a different conclusion: The Rams chose not to renew the Agreement because of her performance and how she treated people.  Plaintiff was not rehired for a number of reasons, but her age and sex were not among them.

Plaintiff cannot show that the Rams' many reasons for not giving her an Agreement after what they told her 18 months earlier would be final contract were all pretextual.  Her work, attitude and treatment of co-workers were unsatisfactory by any objective measure.  There is no evidence that she suffered any kind of retaliation for any kind of protected activity.  **A Title VII retaliation claim "[i]s not a cudgel to be wielded by underperforming and unprofessional employees to prevent justified, non-discriminatory employment termination."** *Brown v. City of Jacksonville*, 771 F.3d 883, 894 (8th Cir. 2013).  The Rams are entitled to summary judgment on Plaintiff's retaliation claim as a matter of law.

F.  **Count IV.  (Battery)**  Plaintiff claims Bob Reif committed battery by "touch[ing] [her] shoulders, back and waist in an offensive and intimidating manner."  **Ex. A at ¶66**.  She claims this conduct showed "conscious disregard for [her] health and safety," and that the alleged touching(s) were "offensive, threatening, degrading and intimidating."  *Id.* **at ¶68-69**.

The elements of offensive touching battery are:  (a) defendant intentionally contacted plaintiff, (b) defendant thereby caused contact with plaintiff which was offensive to plaintiff, and (c) such contact would be offensive to a reasonable person.  Missouri Approved Instruction 23.02, Notes on Use (1990 Revision).

---

[8] *See Recio v. Creighton Univ.,* 521 F.3d 934, 941 (8th Cir. 2008) (holding that **six** month lapse was insufficient to show causation); *Lewis v. Saint Cloud State Univ.,* 467 F.3d 1133, 113*8* (8th Cir. 2006) ("We have held that an interval as brief as **two** months did not show causation for purposes of establishing a retaliation claim, and that a **two-week** interval was 'sufficient, but barely so.'") (internal citations omitted)*; Shanklin v. Fitzgerald*, 397 F.3d 596, 604 (8th Cir. 2005) (stating that with a **ten** month delay, "any causal nexus inference tends to evaporate").

14

Plaintiff never reported any alleged offensive touching to the Rams -- or to her attorney. **Ex. B 193:3-194:3, 200:4-13.** Plaintiff chronicled a litany of her frustrations, complaints, and perceived slights in a diary, and while her boss' voicemail mailbox being full was offensive enough to include on the list, being touched in a threatening manner by a coworker was not. **Ex. QQ.** The lengthy SUMF and extensive collection of exhibits attached hereto reveal that Plaintiff complained about *every* insignificant slight, real or perceived. None of the emails, "blogs," notes slipped under doors, diary entries or journal notes drafted by Plaintiff mention age or sex discrimination or being touched by Mr. Reif.

As discussed above, Plaintiff's account of a co-worker touching her shoulders three times does not deserve the attention of a Federal Court. The Rams are entitled to summary judgment on Fabian's battery claim. The alleged actions are so patently inoffensive that the third element of the claim fails as a matter of law.

WHEREFORE, all Defendants respectfully pray that this Court enter summary judgment on all claims in Plaintiff's Complaint, and award such other relief the Court deems just.

SHER CORWIN WINTERS LLC

  /s/ Bradley A. Winters
Bradley A. Winters  #29867 MO
Douglas J. Winters #65284 MO
190 Carondelet Plaza, Suite 1100
St. Louis, Mo. 63105
314-721-5200
Fax: 314-721-5201
bwinters@scwstl.com
dwinters@scwstl.com

Attorneys for Defendants St. Louis Rams Partnership, The Rams Football Company, Inc., ITB Football Company, LLC and The St. Louis Rams LLC

## CERTIFICATE OF SERVICE

      I hereby certify that on September 30, 2013, the above and foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system or by hand and mailing upon the following:

Edward C. Kruse #35595
KRUSE, REINKER & HAMILTON LLC
2016 S. Big Bend
St. Louis, Missouri  63117
(314) 333-4140
(314) 558-3102 (fax)

 ATTORNEYS FOR PLAINTIFF

       /s/ Bradley A. Winters