**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

|  |  |
|---|---|
| LORY FABIAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 4:12-CV-1112-JAR |
| | ) |
| THE ST. LOUIS RAMS PARTNERSHIP, | ) |
| et al., | ) |
| | ) |
| Defendants. | ) |

<u>**MEMORANDUM AND ORDER**</u>

This matter is before the Court on Defendants' Motion for Summary Judgment. (Doc. No. 47) The motion is fully briefed and ready for disposition. For the following reasons, Defendants' motion for summary judgment will be granted in part and denied in part.

As a threshold matter, Defendants move to strike Plaintiff's Statement of Uncontroverted Material Facts on the grounds that Local Rule 7-4.01 does not permit such a filing. (Doc. No. 63) Defendants contend Plaintiff is required to submit a statement of material facts as to which she contends a genuine issue exists and yet she has filed a statement of facts as to which she contends a genuine issue does not exist.

Motions to strike are not favored and infrequently granted, because they propose a drastic remedy. <u>Stanbury Law Firm, P.A. v. Internal Revenue Service</u>, 221 F.3d 1059, 1063 (8th Cir. 2000). Nonetheless, resolution of such a motion lies within the broad discretion of the Court. <u>Id</u>. Federal Rule of Civil Procedure 12(f) authorizes a court to strike from a pleading any "redundant, immaterial, impertinent, or scandalous matter." A "pleading" as defined in

Fed.R.Civ.P. 7(a) does not include statements of fact submitted in support of, or in opposition to, a motion for summary judgment. Thus, there is no specific authority in the Federal Rules for striking a party's statement of uncontroverted facts. See Nelson v. Special Administrative Bd. of St. Louis Public Schools, 2012 WL 5508394, at *1-2 (E.D. Mo. Nov. 14, 2012) (citing United States v. Hawley, 812 F.Supp.2d 949, 962 n. 2 (N.D.Iowa 2011) (denying a motion to strike a statement of material facts offered in opposition to a motion for summary judgment)).

The Local Rules of this District do, however, permit the striking of filings which fail to comply with their requirements. Id. Local Rule 7–4.01(E) provides with respect to summary judgment motions:

> A memorandum in support of a motion for summary judgment shall have attached a statement of uncontroverted material facts, set forth in a separately numbered paragraph for each fact, indicating whether each fact is established by the record, and, if so, the appropriate citations. Every memorandum in opposition shall include a statement of material facts as to which the party contends a genuine dispute exists. Those matters in dispute shall be set forth with specific references to portions of the record, where available, upon which the opposing party relies. The opposing party also shall note for all disputed facts the paragraph number from movant's listing of facts . . .

E.D. Mo. L.R. 4.01(E). The Court finds nothing in the Rule to prohibit Plaintiff from submitting the statement of facts that she did. The Court determines that Plaintiff was attempting to demonstrate her belief that there are genuine issues of material fact for trial. See Shepard v. Courtoise, 115 F.Supp.2d 1142, 1145 (E.D. Mo. 2000). Defendants' motion to strike will be denied. The Court will examine the entire record, including Plaintiff's statement of uncontroverted facts and any properly supported factual contentions in opposition, to determine whether there are genuine disputes regarding material facts precluding the entry of summary judgment.

### Background

Plaintiff Lory Fabian was employed by Defendant St. Louis Rams Partnership ("the

Rams") from 1995 to 2011. She held several jobs during her tenure with the Rams, including Coaching Secretary, Executive Assistant to Public Relations Director, and Alumni Relations Coordinator. Plaintiff alleges she is one of several Rams employees over the age of forty (40) who were either fired, laid off, forced to retire, or terminated between 2008 and 2011 and replaced by younger employees. (Compl., ¶ 18)

   According to Plaintiff, after Rams owner Georgia Frontiere died in 2008, the Rams started to push out its older employees. Rams' management often described "changing the culture" of the organization by bringing in "young inexpensive grinders" who could handle the long hours of NFL employment, and commented that they would "like to get rid of all the middle aged women" working for the organization.

   Concerned she would lose her job, Plaintiff met with Rams President John Shaw in April 2008. Following that meeting, Shaw arranged to provide Plaintiff with an employment agreement to protect her job until she reached age 55 on June 14, 2011. The agreement provided for a term of employment from January 1, 2010 through June 30, 2011, thereby ensuring that Plaintiff would qualify for the NFL JC-1 benefit guaranteeing her health insurance through the Rams until age 65. (Doc. No. 48-3) It is undisputed that Plaintiff was told this agreement was her severance. (Deposition of Lory Fabian ("Fabian Depo."), Doc. No. 48-2, 113:20-23)

   On or about April 2009, Plaintiff was moved out of Public Relations/Media and into the newly created position of Alumni Coordinator. Her responsibilities included, but were not limited to, coordinating the Rams' relationships with alumni, setting up personal events with Rams' alumni, and managing all other alumni related activities or tasks. Plaintiff reported to Rams Vice President of Corporate Communication, Molly Higgins and Rams Executive Vice President, Kevin Demoff. Plaintiff characterizes this move as setting her up for failure. She was

not given a budget or cell phone allowance, and did not have an office in which to meet with Rams alumni. Plaintiff claims she was intentionally excluded from staff meetings and from Rams events and activities – all in an effort to systematically shut her out and force her to quit her job. (Compl., ¶ 26) Plaintiff alleges Kevin Demoff told her that "no one in the building liked her" and that she was "too old for her job." (Compl., ¶ 25) In September 2010, some of her job duties and responsibilities were reassigned to Kyle Eversgard, age 24.

In addition, Plaintiff claims she was subjected to sexual harassment and discrimination by Bob Reif, Rams Executive Vice President/Marketing and Sales/Chief Marketing Officer.[1] Plaintiff alleges Reif made inappropriate comments and jokes and touched her in an unwelcome and intimidating manner by massaging her shoulders, pressing the front of his body up against her backside, and putting his arms around her. (Compl., ¶¶ 38-42) Plaintiff reported Reif's conduct to Rams management; however, no corrective action was taken. (Compl., ¶ 46) She points out the Rams did not have a Human Resources Department to address such complaints.

On May 20, 2011, Demoff informed Plaintiff that her employment agreement would not be renewed, and that her services were no longer required. He informed Plaintiff that the Alumni Program was not working and that the position of Alumni Coordinator was going to be eliminated. (Deposition of Kevin Demoff ("Demoff Depo."), Doc. 60-1, 85:3-16) Plaintiff was paid her salary and other benefits as a Rams employee through June 30, 2011, and did in fact qualify for the NFL JC-1 health insurance benefit.

On or about July 15, 2011, Plaintiff filed a dual charge of discrimination with the Missouri Human Rights Commission and the Equal Employment Opportunities Commission (EEOC). On or about March 22, 2012, Plaintiff was mailed her right-to-sue notice pursuant to Title

---

[1] Reif is not a party to this action.

VII. On June 20, 2012, she filed this action alleging age discrimination in violation of the ADEA, 29 U.S.C. § 263(A)(1) & (2) (Count I), sexual discrimination, harassment and hostile work environment (Count II) and retaliation (Count III) in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C, §§ 2000e, et seq., and battery (Count IV).

**Legal Standard**

Summary judgment is appropriate when no genuine issue of material fact exists in the case and the movant is entitled to judgment as a matter of law.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The initial burden is placed on the moving party.  City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988).  If the record demonstrates that no genuine issue of fact is in dispute, the burden then shifts to the non-moving party, who must set forth affirmative evidence and specific facts showing a genuine dispute on that issue.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  In determining whether summary judgment is appropriate in a particular case, the Court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. The Court is required to resolve all conflicts of evidence in favor of the nonmoving party. Osborn v. E.F. Hutton & Co., Inc., 853 F.2d 616, 619 (8th Cir. 1988). The Eighth Circuit has cautioned that "summary judgment seldom should be used in employment discrimination cases, because such cases are inherently fact-based and often depend on inferences rather than on direct evidence." Wierman v. Casey's General Stores, 638 F.3d 984, 1002 (8th Cir. 2011).

**Discussion**

**Age discrimination**

The ADEA makes it "unlawful for an employer ... to discharge any individual or

otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Persons age forty and over are protected by the ADEA. 29 U.S.C. § 631. Plaintiff can meet her burden of establishing intentional discrimination by presenting either direct or, more likely, indirect evidence of employment discrimination based on age. Madel v. FCI Marketing, Inc., 116 F.3d 1247, 1251 (8th Cir. 1997) (citing Rothmeier v. Investment Advisers, Inc., 85 F.3d 1328, 1332–33 (8th Cir.1996)). In cases dealing with indirect evidence of discrimination, courts apply the burden shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).[2] Madel, 116 F.3d at 1251 (citing Holley v. Sanyo Mfg. Inc., 771 F.2d 1161, 1164 (8th Cir.1985)).

Under the McDonnell Douglas analysis, the plaintiff has the initial burden of establishing a prima facie case by showing she was within the protected age group, met applicable job qualifications, was discharged, and that her position was filled by a younger individual. McDonnell Douglas, 411 U.S. at 802. If the plaintiff makes a prima facie showing, thus raising an inference of discrimination, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the plaintiff's discharge. Id. If the defendant meets this burden, the plaintiff must prove that the defendant's reason is merely a pretext for discrimination. Id. at 804.

In support of its motion, Defendant contends Plaintiff cannot make a prima facie case of age discrimination because she lacks competent direct evidence that the Rams' decision not to renew her employment agreement was improperly motivated by her age. (Mem. in Supp., Doc.

---

[2] The McDonnell Douglas test originated in the Title VII context, but has been applied to claims brought under the ADEA. O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, ——, 116 S.Ct. 1307, 1310, 134 L.Ed.2d 433 (1996). See also, Bashara v. Black Hills Corp., 26 F.3d 820, 823 (8th Cir.1994); Brown v. McDonnell Douglas Corp., 936 F.Supp. 665, 670 (E.D. Mo. 1996) (and cases cited therein).

No. 49, pp. 5-7) Alternatively, Defendant argues that Plaintiff's claim fails because she was terminated for legitimate nondiscriminatory reasons, i.e., poor performance and misconduct, and cannot show pretext. (Id., pp. 7-9)

Plaintiff responds that Kevin Demhoff's comments - that she was not a "good fit" for the new position, that she "was too old for her job," and that they wanted "young, inexpensive grinders"- creates an inference of age discrimination, citing Fisher v Pharmacia & Upjohn, 225 F.3d 915, 922 (8th Cir. 2000); Fast v. Southern Union Co., Inc., 149 F.3d 885, 890-92 (8th Cir. 1998); EEOC v. Liberal R-II School District, 314 F.3d 920, 924-25 (8th Cir. 2002); and Beshears v. Communications Services, Inc., 930 F.2d 1348, 1354 (8th Cir. 1991). (Mem. in Opp., Doc. No. 57, pp. 5-7) Plaintiff notes that prior to Demoff's tenure as Chief Operating Officer, the Rams have no documented complaints regarding her job performance or conduct. She contends the Rams failed to follow their own policies regarding performance reviews, and that she received only two reviews during her tenure, both conducted after she was in the position of Alumni Relations Coordinator and after she sought an employment agreement to protect her job. This according to Plaintiff makes the Rams' reliance on her performance reviews suspect. (Id., p. 9)

Finally, as evidence of a pattern of age discrimination, Plaintiff submits affidavits from former employees over the age of 40 who were replaced with younger employees to "change the culture" of the organization, including Terry Fenwick, Ray Ogas, Pamela Benoist, and Chuck Faucette. (Id., pp. 10-11) These individuals state that the Rams alienated its older employees by "creating an atmosphere that older employees were no longer wanted;" "terminating many of the older employees that were good and loyal employees;" "replacing many of the older employees that were over the age of 40 with younger employees;" and "transferring many of the older employees' job duties and responsibilities, while they were still working for the Rams, to

- 7 -

younger employees." (Affidavit of Terri Fenwick ("Fenwick Aff."), Doc. No. 60-3), Affidavit of Ray Ogas ("Ogas Aff."), Doc. No. 60-4), Pam Benoist (Affidavit of Pam Benoist ("Benoist Aff."), Doc. No. 60-5), and Chuck Faucette (Affidavit of Chuck Faucette ("Faucette Aff."), Doc. No. 60-6) Plaintiff points to eighteen former employees she alleges were forced out after 2008 and replaced by younger employees.[3] (Doc. No. 59-2)

In reply, the Rams argue that Plaintiff's witness affidavits fail to "set out facts that would be admissible in evidence" under Rule 56 and should be disregarded by the Court, if not stricken.[4] (Reply, Doc. No. 62, pp. 2-5)  Even with the affidavits, however, the Rams argue Plaintiff is unable to make a prima facie case (id., pp. 8-9), or show that the reasons for not giving her another agreement were pretextual. (Id., pp. 5, 9-13) In particular, the Rams note that of the eighteen allegedly "similarly situated" employees who left the Rams between 2008 and 2011, only twelve were terminated or had contracts that were not renewed; the remaining eight retired or resigned voluntarily. (Id., p. 6) During that same period, the Rams terminated or did not renew contracts of twelve employees under the age of 40. (Affidavit of Kevin Demoff ("Demoff Aff."), Doc. No. 62-5, ¶¶ 3, 4) The Rams concede it was lax in conducting performance reviews of its employees prior to 2008, but that this had nothing to do with age. (Id., p. 15) Finally, Defendant maintains that Plaintiff's poor performance and misconduct

---

[3] Excluding Plaintiff, these employees are: John A. Oswald, Robert E. Wallace, Jr., Jay A. Zygmunt, Giles J. Dowden, Carol L. Kovac, Daniel B. Linza, Jill M. Hahn, Jon E. Kruse, Janice W. Pipp, Pamela R. Benoist, C. Thomas Guthrie, Jr., Linda Rose, Terri L. (Harding) Fenwick, Todd Hewitt, Ray R. Ogas, Terrence Brown, and Rosalind Oglesby.

[4] There is no formal motion to strike before the Court; however, such a motion is not necessary, since the Court has the inherent power to disregard affidavits or portions thereof that violate the standard of Fed.R.Civ.P. 56. The Court must consider only admissible evidence and disregard portions of the affidavits made without personal knowledge, consisting of hearsay, or purporting to state legal conclusions as fact. See Shaver v. Independent Stave Co., 350 F.3d 716, 723 (8th Cir.2003); Woods v. Wills, 400 F.Supp.2d 1145, 1175-76 (E.D.Mo. 2005); Fed.R.Civ.P. 56(e).

justified its decision not to renew her employment contract.

The ultimate issue on a motion for summary judgment in an ADEA case is "whether the evidence is sufficient to create a genuine issue of fact as to whether the employer intentionally discriminated against the plaintiff because of the plaintiff's age." Madel, 116 F.3d at 1251-52 (quoting Rothmeier, 85 F.3d at 1337). Despite Defendant's argument that Plaintiff was not performing at a level that met expectations, the evidence, viewed in a light most favorable to Plaintiff, establishes at least a factual issue as to her prima facie case. In particular, Demhoff testified that in her first year as Alumni Coordinator, Plaintiff managed to have an alumni presence at every game, which he described as "the bare minimum of success" for the program. (Demhoff Depo., 98:10-100:16)

To meet its burden of rebutting Plaintiff's prima facie case, Defendant articulates numerous non-discriminatory reasons for not renewing her contract, including her poor performance reviews, absenteeism, and hostility towards coworkers and superiors. (Defendants' Statement of Uncontroverted Material Facts ("SOF"), Doc. No. 48, ¶ 9, 11-19, 21-29, 39-41)

Plaintiff has presented evidence in response to Defendant's justifications from which a jury could conclude that age was a determinative factor in the decision not to renew her agreement, and specifically Demhoff's age-related comments. Evidence of a corporate atmosphere hostile to older employees "can, if sufficient together with other evidence of pretext, support a reasonable inference of age discrimination." Madel, 116 F.3d at 1252. In particular, age-based comments such as Demhoff's can constitute evidence of discriminatory intent. Id. (evidence that plaintiffs were regularly subjected to discriminatory epithets such as "old fucker," "old fart," and "geriatric set," considered with evidence presented to rebut defendant's proffered reasons for firing plaintiffs, created a factual issue regarding the true motivation for the

terminations); <u>Ryther v. KARE 11</u>, 108 F.3d 832, 842-43 (8th Cir. 1997) (co-employees'
statements that plaintiff was an "old fart," "old man," and "too old to be on the air," with other
evidence, raised an inference of discrimination); <u>Williams v. Valentec Kisco, Inc.</u>, 964 F.2d 723,
728 (8th Cir.1992) (comment about "old man carrying the boxes" could be considered direct
evidence of discriminatory intent, and provided an independent basis to support the jury's finding
of pretext); <u>Beshears v. Asbill</u>, 930 F.2d 1348, 1354 (8th Cir.1991) (direct evidence of
discrimination can include employer's remarks reflecting discriminatory attitude); <u>Perry v. Kunz</u>,
878 F.2d 1056, 1061 (8th Cir.1989) (decisionmaker's comment to another employee that she
chose plaintiff for termination because plaintiff would not retire was evidence of discrimination).
Defendant attempts to explain away these statements, arguing for example that Demhoff
believed Plaintiff would not be a "good fit" based on her reviews and performance; however, it is
for the fact finder to determine what was intended by the statements.

        In addition, Plaintiff submits that a number of other older employees were terminated
between 2008 and 2011. A demonstrated pattern of preference for younger employees can help
prove discriminatory intent. <u>Holley</u>, 771 F.2d at 1166. With respect to Plaintiff's affidavits, the
statements therein are not in themselves conclusive evidence of age discrimination. Nonetheless,
the statements, taken with other evidence of pretext (such as a "trend" toward younger
employees) and the elements of the prima facie case, support a reasonable inference of age
discrimination. <u>See</u> <u>Ryther</u>, 108 F.3d at 844.

        In sum, Plaintiff has satisfied her burden of presenting sufficient evidence to create a
genuine issue of material fact as to whether the Rams intentionally discriminated against her
because of her age. Plaintiff has created a fact issue as to whether the Rams' proffered reasons
are pretextual, and Demhoff's age-based comments, together with a pattern of preference for

younger employees, create a reasonable inference that age was a determinative factor in the decision not to renew Plaintiff's employment agreement. Thus, Defendants' motion for summary judgment on Count I will be denied.

Plaintiff has not responded to Defendant's motion with respect to her claims for sexual discrimination, retaliation or battery. Therefore, the Court finds Plaintiff has abandoned these claims. See Semi-Materials Co., Ltd. v MEMC Electronic Materials, Inc., 2011 WL 134078, at *4 (E.D. Mo. Jan. 10, 2011) (court construed plaintiff's failure to respond to argument raised in motion to exclude as abandonment of intent to introduce opinion). See also Culkin v. Walgreen Co., 2006 WL 839195, at *1 (E.D.Mo. Mar. 27, 2006) (court assumed plaintiff abandoned claims not addressed in opposition to defendant's motion to dismiss); United States v. NHC Health Care Corp., 163 F.Supp.2d 1051, 1058-59 (W.D.Mo.2001) (court assumed plaintiff abandoned claims not addressed in opposition to defendant's motion for summary judgment). Even if Plaintiff's claims were not abandoned, however, they would fail on the merits, as discussed below.

**Sexual discrimination, harassment and hostile work environment**

With respect to Plaintiff's claim for sexual discrimination, Defendants argue she does not allege that sex was a motivating factor in the decision not to renew her contract. Instead, her claim is focused on harassment and unwanted physical contacts. (Mem. in Supp., Doc. No. 49, p. 10)

"Title VII prohibits employers from discriminating based on sex with respect to compensation, terms, conditions, or privileges of employment." Jenkins v. Winter, 540 F.3d 742, 748 (8th Cir. 2008); 42 U.S.C. § 2000e-2(a). "Discrimination based on sex that creates a hostile or abusive working environment violates Title VII." Jenkins, 540 F.3d at 748. A hostile work environment arises when sexual misconduct has the purpose or effect of unreasonably interfering with a person's job performance or creating "an intimidating, hostile, or offensive work

environment." <u>Meritor Savings Bank, FSB v. Vinson,</u> 477 U.S. 57, 65-66 (1986) (quoting 29 C.F.R. 1604.11(a)(3)).

To state a prima facie case of hostile work environment based on sexual harassment, Plaintiff must prove that: (1) she is a member of a protected group, (2) she was subjected to unwelcome sexual harassment, (3) the harassment was based on sex, and (4) the harassment affected a term, condition, or privilege of her employment. <u>LeGrand v. Area Resources for Community and Human Services,</u> 394 F.3d 1098, 1101 (8th Cir. 2005). <u>See</u> <u>also,</u> <u>Jenkins,</u> 540 F.3d at 748-49. To determine whether a work environment is hostile and abusive, the Court examines the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or mere offensive utterance, and whether it unreasonably interferes with an employee's job performance. <u>Cross v. Prairie Meadows Racetrack & Casino, Inc</u>., 615 F.3d 977, 981 (8th Cir. 2010). <u>See</u> <u>also</u> <u>Baker v. John Morrell & Co</u>., 382 F.3d 816, 828 (8th Cir. 2004).

According to Plaintiff, Reif put his arm around her on a couple of occasions, "maybe five," (Fabian Depo., 195:13-18; 196:16-19), and massaged her shoulders "a few times." (<u>Id</u>., 196:20-24; 198:7-10) Plaintiff testified she did not believe Reif was suggesting anything sexual by touching her on her shoulders. (<u>Id</u>., 196:2-5; 198:14-15) Moreover, she never told him to stop or reported his conduct to the Rams. (<u>Id</u>., 197:25-198:6; 200:4-7; 201:17-20; 202:9-12) Plaintiff also complained that Reif told jokes she felt were "off-color." (<u>Id</u>., 198:16-18)

"Hostile work environment claims are limited in nature, requiring a high evidentiary showing that the plaintiff's workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." <u>Vajdl v. Mesabi Academy of</u>

Kidspeace, Inc., 484 F.3d 546, 550 (8th Cir. 2007) (citations omitted). The Eighth Circuit has found summary judgment proper in numerous cases due to the plaintiff's failure to show the harassing conduct was "sufficiently severe or pervasive so as to alter the conditions of employment." See, e.g., Duncan v. General Motors Corp., 300 F.3d 928, 933-34 (8th Cir. 2002) (proposition for "relationship," touching of plaintiff's hand, and creation of "Man Hater's Club" poster not actionable); Tuggle v. Mangan, 348 F.3d 714, 722 (8th Cir. 2003) (comments based on plaintiff's sex and the posting of a photograph of plaintiff's "clothed rear end" is not actionable); Ottman v. City of Independence, 341 F.3d 751, 760 (8th Cir. 2003) (belittling and sexist remarks on almost a daily basis are not actionable conduct); Meriwether v. Caraustar Packaging Co., 326 F.3d 990, 993 (8th Cir. 2003) (grabbing plaintiff's buttock and confronting her about it the following day did not rise to actionable conduct); Alagna v. Smithville R-II Sch. Dist., 324 F.3d 975, 977-78 (8th Cir.2003) (a co-worker that called plaintiff's home, frequently visited her office, talked about his relationships with women, touched plaintiff's arm, placed romance novels in plaintiff's work mailbox, invaded plaintiff's personal space, and told plaintiff that he loved her was found to be inappropriate, but the conduct was not sufficiently severe or pervasive).

Viewing Plaintiff's claim in light of these standards, the Court finds there is insufficient evidence to demonstrate that Reif's alleged conduct affected a term, condition or privilege of Plaintiff's employment. See, LeGrand, 394 F.3d at 1101-02 ("to be actionable the conduct must be extreme and not merely rude or unpleasant").  Plaintiff testified she did not consider Reif's touching to be sexual in nature. (Fabian Depo., 198:14-15) This conduct was not frequent or physically violent or threating, and did not unreasonably interfere with her work performance. In addition, Plaintiff chose not to report the conduct about which she now complains. (Fabian

- 13 -

Depo., 193:3-194:3; 200:4-13) This is strong evidence that these incidents did not subjectively affect the conditions of her employment. As such, the Court finds Reif's alleged conduct does not "rise[] to the level of actionable hostile work environment sexual harassment." See LeGrand, 394 F.3d at 1102. Defendants' motion for summary judgment on Count II will be granted.

**Retaliation**

To prevail on a retaliation claim, Plaintiff must demonstrate that: 1) she was engaged in a protected activity; 2) suffered an adverse employment action; and 3) the adverse action occurred because she was engaged in the protected activity. 42 U. S. C. § 2000e-3(a). See also Wilkie v. Department of Health and Human Services, 638 F.3d 944, 955 (8th Cir. 2011) (citing Devin v. Schwan's Home Serv., Inc., 491 F.3d 778, 785 (8th Cir.2007)). A "protected activity" can be either opposing an act of discrimination made unlawful by Title VII, or making a charge, testifying, assisting, or participating in an investigation under Title VII. See Davis v. Jefferson Hosp. Ass'n, 685 F.3d 675, 684 (8th Cir. 2012).

Defendant contends Plaintiff cannot establish a claim of retaliation because there is no evidence she was engaged in protected activity. (Mem. in Supp., Doc. No. 49, p. 12) Although Plaintiff alleges she complained about the age discrimination and sexual harassment she was subjected to (Compl., ¶ 61), she testified that she never complained about Reif's conduct, and that the lack of a Human Resources Department made such a complaint impossible. (Fabian Depo., 193:3-194:3; 200:4-13; 202:9-13)

Even assuming Plaintiff engaged in protected activity, Defendant argues that Plaintiff cannot establish the requisite causal connection to establish that the decision not to renew her agreement was in retaliation for complaining. (Mem. in Supp., Doc. No. 49, pp. 13-14) If Plaintiff reported age discrimination and harassment to John Shaw during their April 2008

meeting, the connection with any adverse employment action is too remote in time to present a genuine factual issue on retaliation. Sisk v. Picture People, Inc., 669 F.3d 896, 900 (8th Cir. 2012) (quoting Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1136 (8th Cir.1999)). Because there is no evidence that the Rams retaliated against Plaintiff for any kind of protected activity, Defendants' motion for summary judgment on Count III will be granted.

**Battery**

Under Missouri law, battery is defined as "an intended, offensive bodily contact with another." Woods v. Wills, 400 F.Supp.2d 1145, 1171 (E.D. Mo. 2005) (citing Phelps v. Bross, 73 S.W.3d 651, 656 (Mo.Ct.App. 2002)). Plaintiff's allegations of battery are based on her claims that Reif "touched [her] shoulders, back and waist in an offensive and intimidating manner." (Compl., ¶ 67). She claims this conduct showed "complete indifference to, and a conscious disregard for [her] health and safety," and was "offensive, threatening, degrading and intimidating." (Compl., ¶¶ 68-69)

In support of its motion for summary judgment, Defendants argue that the alleged actions are so patently inoffensive, evidenced by the fact that Plaintiff never complained about it or reported any alleged offensive touching, that her claim for battery fails. (Mem. in Supp., Doc. No. 49, p. 15; Fabian Depo., 193:3-194:3; 200:4-13) "Contact with the body is offensive if it offends a reasonable sense of personal dignity." Cooper v. Albacore Holdings, Inc., 204 S.W.3d 238, 246 (Mo.Ct.App. 2006) (quoting J.D. v. M.F., 758 S.W.2d 177, 178 (Mo.App. E.D.1988)). Because Plaintiff cannot show that Reif made any contact with her that would offend "a reasonable sense of personal dignity," her claim for battery fails. Defendants' motion as to Count IV will be granted.

Accordingly,

- 15 -

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [47] is **GRANTED** in part and **DENIED** in part as follows:

Defendants' motion as to Count I is **DENIED**;

Defendants' motion as to Counts II, III and IV is **GRANTED**.

An appropriate Judgment will accompany this Memorandum and Order.

**IT IS FURTHER ORDERED** that Defendants' Motion to Strike Plaintiff's Statement of Uncontroverted Material Facts [63] is **DENIED**.

_____

**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**

Dated this 21st day of January, 2014.